*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2013-020

SEPTEMBER TERM, 2013

In re L.Z., Juvenile  } APPEALED FROM:
  }
  } Superior Court, Chittenden Unit,
  } Family Division
  }
  } DOCKET NO. 331-7-06 Cnjv

Trial Judge: Alison S. Arms

In the above-entitled cause, the Clerk will enter:

Mother appeals termination of her parental rights to her daughter L.Z., born in September 1995. On appeal, mother argues that the court erred in granting termination because there was no change of circumstances since the prior disposition pursuant to which L.Z. was in long-term foster care with visitation with mother. We affirm.

L.Z. and her family immigrated to the United States in 1998. In July 2006, a petition was filed to have L.Z. declared a child in need of care or supervision (CHINS), and L.Z. was placed in the custody of the Department for Children and Families (DCF). The CHINS petition alleged physical and sexual abuse of L.Z. and her siblings, domestic violence, and neglect of the children. In October 2006, mother stipulated to a CHINS order. The initial case plan contemplated reunification. Mother was required, however, to address her mental health issues, gain parenting skills, create a safe environment for her children, and obtain housing. In 2008, the court approved a permanency plan calling for long-term foster care, holding that reunification was not feasible but that contact with mother was in L.Z.'s best interests. In February 2012, DCF filed petitions to terminate parental rights. Following a hearing, the court granted the request, concluding that there was a change of circumstances based on mother's lack of progress and that termination was in L.Z.'s best interests. Mother appeals.

When the termination of parental rights is sought, the trial court must conduct a two-step analysis. In re B.W., 162 Vt. 287, 291 (1994). The court must first find that there has been a substantial change in material circumstances; second, the court must find that termination of parental rights is in the child's best interests. Id.

On appeal, mother argues that there was no change of circumstances. Mother contends that the only reason proffered by DCF for termination after years of long-term foster care was L.Z.'s desire to be adopted, not mother's stagnation, and that therefore a change of circumstances could not be based on a finding of stagnation. We discern no error. Mother's argument rests on the DCF caseworker's testimony that in March 2011 the case plan was changed from long-term foster care to a concurrent plan of long-term foster care and adoption. In answer to why the caseplan recommendation changed to adoption, the caseworker answered, "Prior to the March 2011 caseplan, [L.Z.] had begun to express that she did not want to be in foster care any longer. Through conversations with [the social worker] and I, she also said that she didn't think that her

mother would be able to care for her." Mother interprets this statement as demonstrating that the sole reason for termination was L.Z.'s desire to be adopted and therefore it was error for the court to rely on stagnation as a basis for changed circumstances.

Mother's argument oversimplifies the reasoning behind DCF's change in caseplan goal. When explaining why L.Z. desired to be adopted and why reunification was not possible, the caseworker noted that mother continued to lack suitable housing and continued to lack understanding regarding how her actions impacted L.Z. Both the caseworker and social worker also testified that mother is not able to put her child's needs ahead of her own. In addition, on cross-examination, in answer to why the caseplan goal was changed, the caseworker explained that L.Z. did not "feel like her mother can care for her."

It is evident from the record that L.Z.'s desire to be adopted and mother's lack of progress are not two wholly separate reasons for seeking a change in the caseplan goal. The matters are interrelated. Given mother's lack of progress and continued inability to care for her, L.Z. desired to be adopted. Thus, it was entirely proper for the trial court to base its finding of changed circumstances on mother's lack of progress.

Mother also argues that her situation had not changed since the prior disposition order and therefore there is no change of circumstances. In essence, mother argues that since she had already stagnated for some years, her current lack of progress does not amount to a change in circumstances. Moreover, mother argues that because the DCF caseplans during the years preceding termination did not reflect any expectation of reunification, mother's inability to resume parenting within a reasonable period of time cannot constitute a change in circumstances.

There is no merit to mother's argument. Stagnation occurs when a parent's abilities have not improved from the time of the prior disposition order. See In re D.C., 168 Vt. 1, 4 (1998). Here, the unchallenged findings indicate that mother did not improve in her ability to care for L.Z. We note that mother's ability to care for L.Z. is relevant even if the disposition plan calls for long-term foster care or permanent guardianship by another adult. The purpose of the long-term foster care plan was to facilitate ongoing visitation between L.Z. and her mother. The record supports the trial court's conclusion that since the prior disposition order mother had not successfully made the changes necessary to effectively fulfill even the more limited parental role envisioned for her pursuant to the long-term foster care plan. Mother's continued lack of progress is sufficient to demonstrate stagnation.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice